J. F. BEAM & D. A. BEAM v. D. FRONEBERGER, THE FIRST NATIONAL BANK OF CHARLOTTE, WM. TIDDY and RICHARD TIDDY.

Where a guardian took a conveyance of land to himself from a former guardian in discharge of the indebtedness of the latter, the wards have an election to take the land *in specie* in satisfaction of their debt, or to sue on the guardian bond and look to the land as a security for the amount due them.

There being five wards, and the second guardian having settled with three of them, the two others have the right, notwithstanding they had sued on the guardian bond, to have the land subjected in the hands of a purchaser at execution sale, without actual notice of their claim, and sold for the payment of their debt.

A surety on the guardian bond having paid his proportionate part of the judgment rendered on the bond and taken a receipt expressed to be in full discharge of his liability ; *Held*, that thereby the principal was not discharged, and the wards might still look to said land for the payment of the balance due them.

The two wards, *under such circumstances as above*, are entitled to have the land sold and the balance due them *first* paid out of the proceeds, but having made their election, they are not entitled to the land itself, and the surety on the bond, who paid part of the recovery, has the right to be reimbursed if the proceeds be sufficient, and the purchaser at the sale under execution is entitled to the residue.

(*Younce* v. *McBride*, 68 N. C. Rep., 532, cited and approved.)

CIVIL ACTION, tried before BUXTON, J., at Spring Term, 1876, of the Superior Court of LINCOLN.

The defendant Froneberger was duly appointed guardian

of the plaintiffs and three other wards, and gave bond as such, with one E. B. Jennings and others as sureties.   One Joshua Beam had been the guardian of said wards, and, in settlement of his guardianship with the defendant Froneberger, conveyed to him a tract of land, whereupon Froneberger gave him a receipt in full of his indebtedness to said wards.   Defendant Froneberger settled with three of his wards, and this action was brought by the other two to subject said land to the payment of the amount due them.

The plaintiff J. F. Beam had sued Froneberger and the sureties on his guardian bond, and recovered judgment against them.   An execution was issued and returned by the sheriff, with the plaintiffs' receipt for $300, expressed to be in full of Jennings's liability under the execution, and discharging him therefrom.

· The Solicitor for the District had prosecuted another action on said bond, for the benefit of the other plaintiff, D. A. Beam, to judgment; execution was issued, and the sheriff returned it with receipt of D. A. Beam, also expressed to be in discharge of Jennings, one of the sureties on the bond as aforesaid.

Before the recovery of these judgments the land in controversy had been sold under execution against Froneberger, and purchased by the First National Bank of Charlotte, one of his creditors, without actual notice of the plaintiff's claim upon the land.   The Bank executed a bond for title to the other defendants, Wm. Tiddy and Richard Tiddy, before the commencement of this action, and they had no actual notice of the plaintiffs' claim, but they had paid no part of the purchase money.

The plaintiffs, in their complaint, demanded judgment: 1st. That the Bank be declared trustee of said land for their use.   2d. That the Bank and W. & R. Tiddy deliver possession to them, and account for use and occupation of the land.   3d. That the land be sold and the proceeds applied

to payment of the plaintiffs' debt, and the surplus, if any' paid to the Bank.    4th. For other relief.

The jury found a verdict on the issues, under instructions from the Court, establishing the facts as above, and the plaintiffs thereupon asked for a sale of the land.    This was refused, and a judgment rendered, ordering the sale of two-fifths of the land, and the application of the proceeds to the payment of plaintiffs' debt and costs; the surplus, if any, to be paid to the Bank.

Both parties thereupon appealed.

*Hoke,* and *Battle & Mordecai,* for plaintiffs.
*Shipp & Baily,* for defendants.

RODMAN, J.    One Joshua Beam, having been guardian of the plaintiffs and of three others, the brothers and sisters of the plaintiffs, was discharged or resigned, and the defendant Froneberger was appointed guardian in his place; and gave bond, with Jennings and others as his sureties. Froneberger then had an account with the former guardian, who was found indebted to his five wards in a certain sum. In payment of this sum he (Froneberger) took from Beam, the former guardian, a conveyance to himself (Froneberger) of the land mentioned in the pleadings to his own use, and released Beam.

1. The question presented by these facts is in all material particulars identical with that in *Younce* v. *McBride,* 68 N. C. Rep., 532.

The land so bought with the money of the wards was subject to a trust in their favor.    On arriving at age they had an election to take the land itself, with the profits since the purchase, or to call on the guardian to make good the sum in which the former guardian had been found indebted.

It is no answer to the claim to a trust in the land that the defendant gave a guardian bond, which was a security

to the wards for the sum which he ought to have received. There is no reason why the land and the bond should not be collateral securities to the wards.

By suing on the guardian bond of the defendant, the wards made their election not to take the land *in specie* in satisfaction of the sum owing them by the first guardian. But they did not thereby give up their right to look to the land as a security for what might be due them, on a failure to procure satisfaction out of the bond.

The land, like the bond, was a security to each one of the wards for his share in the fund. When the defendant paid off and satisfied three of his wards, he relieved the land from the trust in their favor, but not from that in favor of the other two, who are the present plaintiffs. In the absence of anything done by them to release their rights, the whole land is liable to the satisfaction of their demands, and to be sold for that purpose.

2. It is contended, however, by the defendants, that the discharges given to Jennings operated to release the principal debtor, as well as all the sureties. How it might be as to the co-sureties of Jennings, it is unnecessary to enquire. But we know of no authority for holding that a release to *one or all of the sureties* of a guardian, without full satisfaction, will operate by implication, or by an inference of law, to release the principal. The cases which hold that a release of the principal discharges the sureties, or that a release of one surety discharges the others, are plainly distinguishable. We are of opinion, that the liability of the guardian was not discharged by the release of Jennings.

3. It is too well settled to require a reference to any authority, that a purchaser of land, at execution sale, takes it subject to all equities affecting the land, whether he had notice of them or not. The Bank stands in the shoes of Froneberger, and the lessees of the Bank in its shoes.

The plaintiffs asked a judgment that the Bank be de-

clared a trustee of *the land* for them. There are several reasons why this judgment was improper.

*First.* The land was held by the guardian defendant, in trust for all his wards, three of whom have been satisfied by the guardian, and the land discharged from their claims. It would be inequitable to give two the land which belonged to the five, without substituting to their rights the guardian, and also Jennings, to the extent of his payments to the plaintiffs. Before the plaintiff could take the whole fund received by the guardian, (which, for aught we can know, may have greatly advanced in value) they would be required to refund those sums paid in exoneration of the land. At the utmost, they would be entitled to but two-fifths of the land if they had elected to take the land in specie.

*Second.* By suing on the guardian bond, and receiving partial payments from Jennings, the plaintiffs have elected not to take the land in specie, but to look to it as a collateral security for their debt. The Judge properly refused the judgment demanded by plaintiffs.

We think, for the reasons above, that the Judge erred in the judgment which he rendered.

Judgment below modified to read as follows:

It is ordered that the lands mentioned in the pleadings be sold on such terms, by such person and at such time and place, as may be ordered by the Judge of the Superior Court of Lincoln. That the proceeds, after paying the expenses of the sale, be applied,

*First*—To pay the sums adjudged to be owing to the plaintiffs by defendant Froneberger, their late guardian.

*Second*—To repay Jennings such sums as he has paid to the plaintiffs as surety for their said guardian, provided he shall make himself a party to this action in such time as shall be allowed by said Superior Court.

*Third*—To pay the residue to the First National Bank of Charlotte.

As the plaintiffs demanded a judgment to which they were not entitled, and the judgment rendered is modified, neither party will recover costs in this Court.

The case is remanded to the Superior Court of Lincoln, to be proceeded in, &c.

This opinion is given in both the appeal by plaintiffs and that by defendants, and the judgment is rendered in both.

PER CURIAM.                         Judgment accordingly.